# United States District Court
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

EARLINE LAHMAN, RANDY LAHMAN, §
AND NATIONWIDE PROVIDER §
SOLUTIONS, LLC, §
§
§ Civil Action No. 4:17-CV-00305
v. § Judge Mazzant
§
NATIONWIDE PROVIDER SOLUTIONS, §
CAPE FOX CORPORATION, §
CONCENTRIC METHODS LLC, CAPE §
FOX FEDERAL INTEGRATORS, CAPE §
FOX PROFESSIONAL SERVICES, LLC, §
NAVAR INC., CAPE FOX §
GOVERNMENT SERVICES, CAPE FOX §
FACILITIES SERVICES, CAPE FOX §
SHARED SERVICES, MICHAEL BROWN, §
GEORGE BERNARDY, WILLIAM §
WALKER, BERNARD GREEN, HAROLD §
MITCHELL, CHARLES JOHNSON, §
CLIFFORD BLAIR, KATHERINE §
MILTON §

## MEMORANDUM OPINION AND ORDER

Before the Court is (1) Defendant Clifford Blair's ("Blair") Motion to Dismiss for Lack of

Personal Jurisdiction, for Failure to State a Claim, and, in the Alternative, for a More Definite

Statement (Dkt. #64), (2) Defendant George Bernardy's ("Bernardy") Motion to Dismiss for Lack

of Personal Jurisdiction, for Failure to State a Claim, and, in the Alternative, for More Definite

Statement (Dkt. #65); (3) Defendant William Walker's ("Walker") Motion to Dismiss for Failure

to State a Claim (Dkt. #66); (4) Defendant Katherine Milton's ("Milton") Motion to Dismiss for

Lack of Personal Jurisdiction (Dkt. #67); (5) Defendant Harold Mitchell's ("Mitchell") Motion to

Dismiss for Insufficient Service of Process, for Lack of Personal Jurisdiction, for Failure to State

a Claim, and, in the Alternative, for More Definite Statement (Dkt. #72); (6) Defendant Charles

Johnson's ("Johnson") Motion to Dismiss for Failure to State a Claim and, in the Alternative, for a More Definite Statement (Dkt. #73); (7) Defendant Michael Brown's ("Brown") Motion to Dismiss for Insufficient Service of Process, for Failure to State a Claim and, in the Alternative, for a More Definite Statement (Dkt. #75); (8) Defendant Cape Fox Shared Services's ("Shared Services") Motion to Dismiss for Lack of Personal Jurisdiction, for Failure to State a Claim and, in the Alternative, for More Definite Statement (Dkt. #76); (9) Defendant Cape Fox Facilities Services's ("Facilities Services") Motion to Dismiss for Lack of Personal Jurisdiction, for Failure to State a Claim and, in the Alternative, for More Definite Statement (Dkt. #77); (10) Defendant Cape Fox Government Services's ("Government Services") Motion to Dismiss for Lack of Personal Jurisdiction, for Failure to State a Claim and, in the Alternative, for More Definite Statement (Dkt. #78); (11) Defendant Concentric Methods, LLC's ("Concentric Methods") Motion to Dismiss for Lack of Personal Jurisdiction, for Failure to State a Claim and, in the Alternative, for More Definite Statement (Dkt. # 79); (12) Defendant Cape Fox Federal Integrators's ("Federal Integrators") Motion to Dismiss for Lack of Personal Jurisdiction, for Failure to State a Claim, and, in the Alternative, for More Definite Statement (Dkt. #80); (13) Defendant Navar, Inc.'s ("Navar") Motion to Dismiss for Failure to State a Claim and, in the Alternative, for More Definite Statement (Dkt. #81); and (14) Defendant Cape Fox Professional Services's ("Professional Services") Motion to Dismiss for Lack of Personal Jurisdiction, for Failure to State a Claim, and, in the Alternative, for More Definite Statement (Dkt. #82). After reviewing the relevant pleadings and motions, the Court finds that they should be granted in part and denied in part.

# BACKGROUND

This case concerns a failed business association. On December 11, 2007, Mrs. Earline Lahman ("Mrs. Lahman"), founded Nationwide Provider Solutions, LLC ("Nationwide Provider"), a Medical Service Organization, to help physicians and health care providers with medical billing and credentialing. Mrs. Lahman aspired to grow Nationwide Provider's client-base by adding private parties, the U.S. Department of Veteran Affairs' Division of Health Affairs, U.S. Department of Health, U.S. Indian Health Affairs, and Texas state and local health providers in the Paris, Texas region.

On March 16, 2011, Nationwide Provider obtained a U.S. General Services Administration Schedule Contract Vehicle, allowing the company to bid for federal government contracts ("Government Services Contract Vehicle"). Nationwide Provider also received 8(a) and 8(m) status from the Small Business Administration. The 8(a) Business Development Program helps small, disadvantaged businesses secure government contracts. Meanwhile, the 8(m) Program promotes Women-Owned Small Businesses—businesses with at least fifty-one percent direct, female ownership and control. As a company with 8(a) and 8(m) status and a Government Services Contract Vehicle, Nationwide Provider was one of nine businesses able to bid for federal agency contracts through multiple contract vehicles in the Paris, Texas region. In June 2011, Nationwide Provider received certification from the State of Texas Comptroller of Public Accounts as a certified Historically Underutilized Business and its accompanying state contracting advantages. Nationwide Provider's right to bid on federal agency contracts in the Paris, Texas region and help federal agencies meet their stated goal of awarding five percent of their contracts to Women-Owned Small Businesses made it valuable.

A year later, Randy Lahman ("Mr. Lahman") fell thirty feet onto concrete when a tree limb struck a lift he was using. From July 2012 through March 2015, Mr. Lahman underwent six surgeries for his injuries, four of which were on his spine. Mr. Lahman's medical expenses and his lost income put a severe emotional and financial strain on his family and Nationwide Provider. Mrs. Lahman continued to run Nationwide Provider, but in time recognized that she and Nationwide Provider could use outside help.

The 8(a) Program has a Mentor-Protégé Program, permitting young 8(a) companies to learn from other more experienced businesses. The Small Business Administration Mentor-Protégé Program not only provides needed support, advice, and resources for the protégé 8(a) company but also permits the mentor and protégé to enter into joint venture arrangements where the mentor may buy up to forty percent of the protégé in order to help the protégé raise capital.

Mrs. Lahman connected with Kay Bills ("Ms. Bills"), the head of Mid America Government Industry Coalition, Inc. ("MAGIC"). MAGIC is a regional trade association for growing businesses involved with Federal Contracting in Oklahoma, Texas, New Mexico, and Colorado. On September 4, 2012, Ms. Bills introduced Mrs. Lahman via e-mail to Cape Fox's Chief Executive Officer ("CEO") Brown, as a potential mentor for Nationwide Provider. In that e-mail, Mrs. Lahman summarized Nationwide Provider's history and goals for growth with Brown. The following day, Brown telephoned Mrs. Lahman to schedule a face-to-face meeting.

On September 26, 2012, Brown, Bernardy, Cape Fox's Chief Financial Officer ("CFO") and Johnson, the CEO of Navar, a wholly owned Cape Fox subsidiary, met with Mrs. Lahman in Paris, Texas. In order to discuss the details and business plan of Nationwide Provider more fully, Mrs. Lahman and Brown signed a mutual non-disclosure agreement. At the meeting's conclusion, Brown and Bernardy told Mrs. Lahman about their plan for Cape Fox to buy Nationwide Provider.

On October 2, 2012, Walker, Cape Fox's General Counsel, expressed his enthusiasm for Cape Fox to quickly purchase Nationwide Provider in a letter to Mrs. Lahman, as President of Nationwide Provider. The letter also outlined the initial terms of Cape Fox's offer.

In November 2012, Cape Fox and Nationwide Provider recorded the terms and conditions for Cape Fox's purchase of Nationwide Provider in a Letter of Intent in Manassas, Virginia. Brown signed this letter on Cape Fox's behalf. Mrs. Lahman agreed to and acknowledged the Letter of Intent on November 19, 2012. The Letter of Intent conditioned Cape Fox's purchase of Nationwide Provider on the Small Business Administration's approval of the transaction and left the purchase price open for future negotiation. The Letter of Intent, however, also included several conditions that the parties had to satisfy in order to complete the purchase of Nationwide Provider (Dkt. #25 at pp. 12–13).

In early January 2013, Cape Fox sent another Agreement for Purchase and Sale of Membership Interests of Nationwide Provider to Mrs. Lahman and Mr. Lahman. The Agreement stipulated that it "shall have no present effect and no enforceable legal rights are created arising from this Agreement prior to the approval of this Agreement by the [Small Business Administration]." On January 31, 2013, Plaintiffs allege that Cape Fox "drafted and insisted that [Nationwide Provider] sign a Contract for Administrative Services." (the "Administrative Services Contract") (Dkt. #25 at p. 18). Per the Administrative Services Contract, Cape Fox assumed operational control of Nationwide Provider's accounting, finances, information technology, network management, and human resources (Dkt. #25 at p. 16). The Small Business Administration ultimately never approved of any agreement for Cape Fox to buy Nationwide Provider.

Plaintiffs allege that Defendants, working collectively, exercised unauthorized and unlawful control over Nationwide Provider's operations, reneged on various representations central to the agreement to sell Nationwide Provider to Cape Fox, and deprived the Plaintiffs of their corporate authority, income, and property. Notably, Plaintiffs allege that Navar's CEO Johnson first asked Mrs. Lahman to "add [Navar's] NAICS code for construction to [Nationwide Provider's] System for Award Management (SAM) Profile for qualification and submit a bid for repair work on a hangar at [a Naval Air Station in Texas]." (Dkt. #25 at p. 21). Plaintiffs allege that after Mrs. Lahman refused to add the code, Johnson directed Cape Fox's Chief Administrative Officer Debbie Smith ("Smith") to add the [NAICS] code to [Nationwide Provider's] profile to enable [Navar] to submit the bid." (Dkt. #25 at p. 21).

On October 3, 2017, Plaintiffs filed their Second Amended Complaint, alleging (1) fraud, (2) misrepresentation, (3) breach of agreements of Cape Fox's purchase of Nationwide Provider, (4) breach of employment agreements, (5) that the Court should void the purchase/sale contract, (6) unconscionability, (7) quantum meruit, (8) conversion, (9) trespass to real property, (10) tortious inference, (11) breach of fiduciary duty, (12) intentional infliction of emotion distress, (13) conspiracy, (14) single business enterprise liability, and (15) violation of law regarding the handling of medical records against Defendants (Dkt. #25).

On November 20, 2017, Blair filed his Motion to Dismiss for Lack of Personal Jurisdiction, for Failure to State a Claim, and, in the Alternative, for a More Definite Statement (Dkt. #64). On November 21, 2017, Bernardy filed his Motion to Dismiss for Lack of Subject Matter Jurisdiction, for Failure to State a Claim, and, in the Alternative, for More Definite Statement (Dkt. #65). On December 7, 2017, Walker filed his Motion to Dismiss for Failure to State a Claim (Dkt. #66). On December 8, 2017, Milton filed her Motion to Dismiss for Lack of Personal Jurisdiction, for

Failure to State a Claim, and, in the Alternative, for More Definite Statement (Dkt. #67). On December 12, 2017, Mitchell filed his Amended Motion to Dismiss for Insufficient Service of Process, Lack of Personal Jurisdiction, Failure to State a Claim, and, in the Alternative, for More Definite Statement (Dkt. #72). On December 12, 2017, Johnson filed his Motion to Dismiss for Failure to State a Claim and, in the Alternative, for More Definite Statement (Dkt. #73). On December 15, 2017, Brown filed his Motion to Dismiss for Insufficient Service of Process, Failure to State a Claim, and, in the Alternative, for More Definite Statement (Dkt. #75).

On December 15, 2017, Shared Services, Facilities Services, Government Services, Concentric Methods, Federal Integrators, and Professional Services filed Motions to Dismiss for Lack of Personal Jurisdiction, Failure to State a Claim, and, in the Alternative, for More Definite Statement[1] (Dkt. #76; Dkt. #77; Dkt. #78; Dkt. #79; Dkt. #80; Dkt. #82). On the same day, Navar filed its Motion to Dismiss for Failure to State a Claim, and, in the Alternative, for More Definite Statement (Dkt. #81).

The Plaintiffs filed no response. Local Rule CV-7(d) provides as follows:

> **Response and Briefing.** The response and any briefing shall be contained in one document. A party opposing a motion shall file the response, any briefing and supporting documents within the time period prescribed by Subsection (e) of this rule. A response shall be accompanied by a proposed order conforming to the requirements of Subsection (a) of this rule. Briefing shall contain a concise statement of the reasons in opposition to the motion and a citation of authorities upon which the party relies. A party's failure to oppose a motion in the manner prescribed herein creates a presumption that the party does not controvert the facts set out by movant and has no evidence to offer in opposition to the motion.

Local Rule CV-7(d). Since no response was filed, the Court will assume that Plaintiffs do not controvert the facts set out in the aforementioned motions.

---

[1] When collectively referring to Shared Services, Facilities Services, Government Services, Concentric Methods, Federal Integrators, and Professional Services, the Court does so as the "Subsidiary Defendants."

# LEGAL STANDARD

## Rule 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant. FED. R. CIV. P. 12(b)(2). After a non-resident defendant files a motion to dismiss for lack of personal jurisdiction, it is the plaintiff's burden to establish that *in personam* jurisdiction exists. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990) (citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 202 (5th Cir. 1989)).

To satisfy that burden, the party seeking to invoke the court's jurisdiction must "present sufficient facts as to make out only a prima facie case supporting jurisdiction," if a court rules on a motion without an evidentiary hearing. *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). When considering the motion to dismiss, "[a]llegations in [a] plaintiff's complaint are taken as true except to the extent that they are contradicted by defendant's affidavits." *Int'l Truck & Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 557 (N.D. Tex. 2003) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 282–83 n.13 (5th Cir. 1982)); *accord Black v. Acme Mkts., Inc.*, 564 F.2d 681, 683 n.3 (5th Cir. 1977). Further, "[a]ny genuine, material conflicts between the facts established by the parties' affidavits and other evidence are resolved in favor of plaintiff for the purposes of determining whether a *prima facie* case exists." *Id.* (citing *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 161, 1067 (5th Cir. 1992)). However, if a court holds an evidentiary hearing, a plaintiff "must establish jurisdiction by a preponderance of the admissible evidence." *In re Chinese Manufactured Drywall Prods. Liab. Lit.*, 742 F.3d 576, 585 (5th Cir. 2014) (citing *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241–42 (5th Cir. 2008)).

A court conducts a two-step inquiry when a defendant challenges personal jurisdiction. *Ham v. La Ciega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993). First, absent a controlling federal statute regarding service of process, the court must determine whether the forum state's long-arm statute confers personal jurisdiction over the defendant. *Id.* And second, the court establishes whether the exercise of jurisdiction is consistent with due process under the United States Constitution.

The Texas long-arm statute confers jurisdiction to the limits of due process under the Constitution. *Command-Aire Corp. v. Ont. Mech. Sales and Serv. Inc.*, 963 F.2d 90, 93 (5th Cir. 1992). Therefore, the sole inquiry that remains is whether personal jurisdiction offends or comports with federal constitutional guarantees. *Bullion*, 895 F.2d at 216. The Due Process Clause permits the exercise of personal jurisdiction over a non-resident defendant when the defendant has established minimum contacts with the forum state "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Minimum contacts with a forum state can be satisfied by contacts that give rise to either general jurisdiction or specific jurisdiction. *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994).

General jurisdiction exists only when the defendant's contacts with the forum state are so "'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127, 134 S. Ct. 746, 754, 187 L. Ed. 2d 624 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 2851, 180 L. Ed. 2d 796 (2011)); *see Cent. Freight Lines v. APA Transp. Corp.*, 322 F.3d 376, 381 (5th Cir. 2003) (citing *Helicopteros Nacionales de Colum., S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). Substantial, continuous and systematic contact with a forum is a difficult standard to meet

and requires extensive contacts between a defendant and the forum. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). "General jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed." *Access Telecomm., Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1992) (citation omitted). However, "vague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction." *Johnston*, 523 F.3d at 609 (citing *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 596 (5th Cir. 1999)).

Specific jurisdiction is proper when the plaintiff alleges a cause of action that grows out of or relates to a contact between the defendant and the forum state. *Helicopteros*, 466 U.S. at 414 n.8. For the Court to exercise specific jurisdiction, the Court must determine "(1) whether the defendant has . . . purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). Defendants who "'reach out beyond one state' and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for consequences of their actions." *Burger King Corp.*, 471 U.S. at 475 (citing *Travelers Health Assoc. v. Virginia*, 339 U.S. 643, 647 (1950)). Establishing a defendant's minimum contacts with the forum state requires contacts that are more than "random, fortuitous, or attenuated, or of the unilateral activity of another party or third person." *Id.*

**Rule 12(b)(5)**

Federal Rule of Civil Procedure 12(b)(5) provides that a party may file a motion to dismiss for insufficient service of process. A district court has "broad discretion to dismiss an action for ineffective service of process." *Kreimerman v. Casa Veerkamp, S.A. de C.V.*, 22 F.3d 634, 645 (5th Cir. 1994). Federal Rule 4(m) permits dismissal of a suit if the plaintiff fails to serve a defendant within 90 days of filing, but provides that "if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period." FED. R. CIV. P. 4(m); *Gartin v. Par Pharm. Cos., Inc.*, 289 F. App'x 688, 692 (5th Cir. 2008). "[G]ood cause under Rule 4(m) requires at least as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice." *Gartin*, 289 F. App'x at 692 (citing *Lambert v. United States*, 44 F.3d 296, 299 (5th Cir. 1999)).

**Rule 12(b)(6)**

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.),*

*L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "'A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Id.* at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing [C]ourt to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

**Rule 12(e)**

Rule 12(e) of the Federal Rules of Civil Procedure allows a party to move for a more definite statement of the pleadings when the pleadings are "so vague or ambiguous that the party

cannot reasonably prepare a response." FED. R. CIV. P. 12(e). "If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement . . . before responding." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). Motions for a more definite statement are generally disfavored because "in view of the great liberality of Federal Rule of Civil Procedure 8 . . . it is clearly the policy of the Rules that Rule 12(e) should not be used to . . . require a plaintiff to amend his complaint which under Rule 8 is sufficient to withstand a motion to dismiss." *Source Data Acquisition, LP v. Talbot Grp., Inc.*, 4:07-cv-294, 2008 WL 678645, at *2 (E.D. Tex. Mar. 11, 2008) (citing *Mitchell v. E-Z Way Towers, Inc.*, 269 F.2d 126, 132 (5th Cir. 1959)). In addition, "when a defendant is complaining of matters that can be clarified and developed during discovery, not matters that impede his ability to form a responsive pleading, an order directing the plaintiff to provide a more definite statement is not warranted." *Hoffman v. Cemex, Inc.*, No. H-09-2144, 2009 WL 4825224, at *3 (S.D. Tex. Dec. 8, 2009) (citing *Arista Records LLC v. Greubel*, 453 F.Supp. 2d 961, 972 (N.D. Tex. 2006)). "Nevertheless, parties may rely on Rule 12(e) as a mechanism to enforce the minimum requirements of notice pleading." *Id.*

## ANALYSIS

### I. The Court Lacks Personal Jurisdiction over Blair, Bernardy, Milton, and the Subsidiary Defendants

### A. The Defendants Do Not Have Sufficient Contacts with Texas for the Court to Exercise General Jurisdiction

After examining the facts currently before the Court, it is clear that Plaintiffs cannot meet the burden to show that Blair's, Bernardy's, Milton's[2], and the Subsidiary Defendants' contacts with Texas are sufficient to establish general jurisdiction. Blair, Bernardy, and Milton are not

---

[2] The Court refers to Blair, Bernardy, and Milton collectively as the "Individual Defendants."

Texas residents. Blair and Bernardy are individuals who reside in Alaska. Milton is an individual who resides in Seattle, Washington. Each of the Subsidiary Defendants is a privately held Alaskan Native Corporation that Cape Fox owns and is located in Manassas, Virginia. Cape Fox is an Alaskan Native Corporation with is principal place of business in Ketchikan, Alaska. Such facts fall well short of the substantial hurdle of showing that Defendants are at home in Texas and fail to establish general jurisdiction over them. *See Daimler AG*, 571 U.S. at 127. In turn, the Court will determine whether it has specific jurisdiction over the Individual Defendants and the Subsidiary Defendants.

### B. The Court Lacks Specific Jurisdiction over the Individual Defendants

### i. Blair

Blair argues that the Second Amended Complaint alleges that (1) he resides in Ketchikan, Alaska, (2) during the events giving rise this case, he served as Chair of Cape Fox's Board of Directors, and (3) he is Cape Fox's President. Blair contends that such vague allegations cannot serve as a basis for specific personal jurisdiction over him individually. Blair advances that his status as Cape Fox's officer would not create personal jurisdiction over him even if the Court had personal jurisdiction over Cape Fox.

Via affidavit, Blair swears that he works and keeps a permanent residence in Saxman, Alaska and has only lived and worked in Alaska and Washington (Dkt. #64, Exhibit 1 at p. 2). Blair concedes that he is President of the Board of Directors for Cape Fox and has previously served as a Cape Fox board member, but asserts that he has never visited Texas in those capacities (Dkt. #64, Exhibit 1 at pp. 1–2). At last, Blair claims his only two visits to Texas consisted of walking through a Dallas airport to reach connecting flights (Dkt. #64, Exhibit 1 at p. 2).

### ii.  Bernardy

Bernardy argues that the Second Amended Complaint only alleges that: (1) he resides in Anchorage, Alaska, (2) he was the Chief Operating Officer ("COO") of Cape Fox during the events leading to this cause of action, (3) he participated in a meeting with Mrs. Lahman in September 2012 in Paris, Texas, (4) Mrs. Lanham told Bernardy and others that she had scheduled a meeting with Liberty Bank, and (5) Bernardy explained the business reasons for Cape Fox's interest in acquiring Nationwide Providers to Mrs. Lahman. Bernardy claims that these pleadings and his status as Cape Fox's corporate officer cannot provide specific jurisdiction over him as an individual.

In his affidavit, Bernardy asserts that he keeps a permanent residence in Anchorage, Alaska and he has not lived or worked elsewhere (Dkt. #65, Exhibit 1 at p. 2). Bernardy declares that he is not employed by or affiliated with any of the entities named as defendants in the Second Amended Complaint (Dkt. #65, Exhibit 1 at pp. 1–2). Bernardy avers that he once served as Cape Fox's COO, but left the company in 2014 (Dkt. #65, Exhibit 1 at pp. 1–2). Bernardy proclaims that he has made fewer than six short visits to Texas in his life (Dkt. #65, Exhibit 1 at p. 2). Bernardy submits that while working with Cape Fox, he visited Texas for two days to meet with Mrs. Lahman and her associates at Nationwide Provider's offices in Paris, Texas as previously mentioned. (Dkt. #65, Exhibit 1 at p. 2).

### iii.  Milton

Milton argues that the Second Amended Complaint alleges that: (1) she resides in Seattle, Washington, (2) she served as President of Cape Fox's Board of Directors during the events leading to this action, and (3) she acted in other executive positions with the Defendant entities.

Milton claims that these vague and conclusory allegations cannot support specific personal jurisdiction over Milton individually.

In her affidavit, Milton declares that she works and resides in Seattle, Washington, and that she has not lived or worked in any other state except Alaska (Dkt. #67, Exhibit 1 at pp. 1–2). Milton contends that she is not currently associated with Cape Fox or the Defendant entities (Dkt. #67, Exhibit 1 at pp. 1–2). Milton asserts that she previously served as President of Cape Fox's Board from October 2014 through December 2015 and then served as a Cape Fox Board member until the end of 2016 (Dkt. #67, Exhibit 1 at pp. 1–2). Milton also claims that aside from attending a mediation for this case in August 2015, she did not visit Texas while serving in these roles, and she has not returned to Texas since the mediation (Dkt. #67, Exhibit 1 at p. 2).

### iv. The Individual Defendants' Affidavits Show that Their Contacts with Texas Do Not Permit the Court to Exercise Specific Jurisdiction over Them

Via affidavit, the Individual Defendants declare that they have entered no contracts and pursued no business in Texas (Dkt. #64, Exhibit 1 at p. 2; Dkt. #65, Exhibit 1 at p. 2; Dkt. #67, Exhibit 1 at p. 2). The Individual Defendants claim that they have never sued anyone, been sued by anyone, submitted to jurisdiction, and maintain no registered agent for service in Texas (Dkt. #64, Exhibit 1 at p. 2; Dkt. #65, Exhibit 1 at p. 2; Dkt. #67, Exhibit 1 at p. 2). The Individual Defendants also submit that they have never worked, filed, or paid taxes in Texas (Dkt. #64, Exhibit 1 at p. 2; Dkt. #65, Exhibit 1 at p. 2; Dkt. #67, Exhibit 1 at p. 2).

The Individual Defendants reject Plaintiffs' claims that they were involved in a joint enterprise with the other Defendants as conclusory and "completely devoid of any specific allegations to support application of [Single Business Enterprise Liability or Joint Enterprise Liability]." (Dkt. #64 at p. 23; Dkt. #65 at p. 23; Dkt. #67 at p. 23). Accordingly, the Individual Defendants contend that "Plaintiffs cannot extend liability to [them] under a single business

enterprise theory." (Dkt. #64 at p. 24; Dkt. #65 at p. 24; Dkt. #67 at p. 24). The Individual Defendants also aver that the Second Amended Complaint is "devoid of any specific allegations that [they were parties] to any fraud or [were] unjustly enriched by alleged wrongful control of [Nationwide Provider]." (Dkt. #64 at p. 19; Dkt. #65 at p. 19; Dkt. #67 at p. 19). The Individual Defendants also contend that the Second Amended Complaint "contains no specific allegations that [the Individual Defendants] made false, material representations to give rise to a fraud or misrepresentation claim, much less any allegations that Plaintiffs relied on such representations made by [them] and were damaged by their reliance on such representations." (Dkt. #64 at p. 17; Dkt. #65 at p. 17; Dkt. #67 at p. 17). Indeed, the Individual Defendants generally deny that the Second Amended Complaint pleads any specific factual basis for the claims against them (Dkt. #64; Dkt. #65; Dkt. #67).

Again, since Plaintiffs filed no response, the Court assumes that they do not "controvert the facts set out by [the Individual Defendants] and [have] no evidence to offer in opposition to [these arguments]." Local Rule CV-7(d).

The Fifth Circuit permits a corporate officer to be held individually liable when a corporate entity serves as their alter ego or the officer perpetrates tortious conduct in the forum on the corporation's behalf. *Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985). The Second Amended Complaint contains no allegation demonstrating such circumstances existed for the Individual Defendants. Though the Second Amended Complaint alleges that Bernardy met with Mrs. Lahman for two days in Paris, Texas and expressed interest in Cape Fox purchasing Nationwide Provider, these actions did not give rise to Plaintiffs' causes of action and do not permit the Court's exercise of specific jurisdiction over Bernardy individually. Next, the Second Amended Complaint hardly mentions Blair and Milton, let alone pleads sufficient facts to show

that the Court can exert specific jurisdiction over them.  Thus, the Court has no basis to exert personal jurisdiction over the Individual Defendants.

Additionally, since Plaintiffs filed no response and presented no affidavits to create any genuine, material conflict with the facts established by the Individual Defendants' affidavits, Plaintiffs' contradicted facts alleged in their complaint are not takin as true.  *See Quintana*, 259 F. Supp. 2d at 557 ("[a]llegations in [a] plaintiff's complaint are taken as true except to the extent that they are contradicted by defendant's affidavits.") (citing *Wyatt*, 686 F.2d at 282–83). Accordingly, Plaintiffs have not adequately pleaded a basis for the Court to exert specific jurisdiction over the Individual Defendants since Plaintiffs have not shown that the Individual Defendants purposefully directed their activities to or availed themselves of the privilege to pursue activities in Texas, Plaintiffs' claims arise or result from the Individual Defendants' forum-related contacts, and the exercise of personal jurisdiction over the Individual Defendants is fair and reasonable.  *See STORMAN ASIA M/V*, 310 F.3d at 378.  Thus, the Individual Defendants' motions to dismiss for lack of personal jurisdiction are hereby granted.

## C.  The Court Lacks Specific Jurisdiction over the Subsidiary Defendants

### i.      Shared Services

Shared Services argues that the Second Amended Complaint alleges that: (1) Shared Services is a privately held Alaskan Native Corporation that Cape Fox wholly owns; (2) Shared Services is located at 7050 Infantry Ridge Road, Manassas, Virginia; (3) Shared Services has transacted business in Lamar County, Texas but the company is not registered as a foreign corporation doing business in Texas with the Texas Secretary of State; (4) Shared Services has no regular place of business or registered agent for service of process in Texas; and (5) Shared

Services's former CFO, Verbena Williams, visited Paris, Texas in August 2013 to meet with local business people and a local bank representative.

Shared Services asserts that the Second Amended Complaint does not purport that it engaged in any specific, wrongful conduct with respect to Plaintiffs, let alone that Shared Services engaged in such conduct in Texas. Shared Services advances that the Second Amended Complaint does not claim that Shared Services falsely represented anything to the Plaintiffs in Texas, trespassed upon or wrongfully exerted its dominion or control over Plaintiffs' property in Texas, tortiously interfered with the Plaintiffs' business in Texas, took any action designed to emotionally distress the Plaintiffs in Texas, or pursued other tortious behavior in Texas.

## ii. Facilities Services

Facilities Services argues that the Second Amended Complaint only alleges that: (1) Facilities Services is a privately held Alaskan Native Corporation that Cape Fox owns; (2) Joseph Hunt is Facilities Services's President; (3) Facilities Services is located at 7050 Infantry Ridge Road, Manassas, Virginia; (4) Facilities Services has done business in Lamar County, Texas but has not registered as a foreign corporation doing business in Texas with the Texas Secretary of State; (5) Facilities Services maintains no regular place of business in Texas or registered agent for service of process in the state.

Facilities Services argues that these allegations cannot support specific personal jurisdiction over it. Facilities Services asserts that, if anything, they demonstrate its lack of contacts with Texas. Facilities Services contends that Plaintiffs' conclusory assertion that Facilities Services has done business in Lamar County, Texas does not alter this fact. Facilities Services elaborates that the Court need not accept conclusory jurisdictional allegations, even if undisputed. Accordingly, Facilities Services argues that the Second Amended Complaints alleges

no acts through which Facilities Services has purposefully availed itself of Texas, let alone acts giving rise to any of the claims broadly asserted against the Defendants in the Second Amended Complaint. In turn, Facilities Services argues that Plaintiffs allege nothing that would support specific jurisdiction over Facilities Services based on any of their tort claims.

### iii. Government Services

Government Services argues that the Second Amended Complaint only alleges that: (1) Government Services is a privately held Alaskan Native Corporation that Cape Fox owns; (2) Fernando Pereira is Government Services's President; (3) Government Services is located at 7050 Infantry Ridge Road, Manassas, Virginia; (4) Government Services has transacted business in Lamar County, Texas but has not registered as a foreign corporation doing business in Texas with the Texas Secretary of State; (5) Government Services keeps no regular place of business in Texas and does not have a registered agent for service of process in the state; and (6) Government Services's Director of Operations, Mike Reed, visited Paris, Texas in early August 2013 so that Mrs. Lahman could introduce Chris Jones to community leaders, healthcare administrators, healthcare providers, and economic development personnel in Paris.

Government Services argues that these allegations cannot support specific personal jurisdiction over Government Services and, rather, show its lack of contacts with Texas. Government Services advances that Plaintiffs' claims that it has done business in Lamar County, Texas are conclusory and insufficient to support specific jurisdiction. Government Services advances that its Director of Operations's attending a meetings held in Paris, Texas in 2013 does not satisfy minimum contacts to establish specific jurisdiction. Government Services declares that the Second Amended Complaint does not allege that Government Services misrepresented anything at these meetings, that the meetings were connected with Government Services's

negotiation of any agreement at issue in this litigation, or that anything else happened at the meetings that could give rise to any of Plaintiffs' claims. Government Services asserts that its officers' presence at a meeting does not establish minimum contacts absent evidence that the defendant engaged in tortious conduct aimed at the forum that gave rise to Plaintiffs' claims. Accordingly, Government Services claims that Plaintiffs' claims against it should be dismissed for lack of personal jurisdiction.

### iv. Concentric Methods

Concentric Methods argues that the Second Amended Complaint alleges that: (1) Concentric Methods is a privately held Alaskan Native Corporation that Cape Fox owns; (2) Harold Mitchell is Concentric Method's President; (3) Concentric Methods is located at 7050 Infantry Ridge Road, Manassas, Virginia; (4) Concentric Methods has done business in Lamar County, Texas but has not registered as a foreign corporation doing business in Texas with the Texas Secretary of State; and (5) Concentric Methods has no regular place of business in Texas or registered agent for service of process in the state.

Concentric Methods argues that these allegations do not permit specific personal jurisdiction over it and prove its lack of contacts with Texas. Concentric Methods states that Plaintiffs' allegation that it has done business in Lamar County, Texas does not permit personal jurisdiction and the Court need not accept conclusory jurisdictional allegations, even if undisputed. Concentric Methods declares that Plaintiffs did not plead a single act by which Concentric Methods has purposefully availed itself of Texas, let alone one yielding any of the claims asserted against it in the Second Amended Complaint. At last, Concentric Methods argues that if Plaintiffs could allege some conduct by it that harmed them, such conduct would not enable specific jurisdiction over Concentric Methods unless it occurred in Texas.

### v. Federal Integrators

Federal Integrators argues that the Second Amended Complaint alleges: (1) Federal Integrators is a privately held Alaskan Native Corporation that Cape Fox owns; (2) Federal Integrator's President is Fernando Pereira; (3) Federal Integrators is located at 7050 Infantry Ridge Road, Manassas, Virginia; (4) Federal Integrators has pursued business in Lamar County, Texas but has not registered as a foreign corporation doing business in Texas with the Texas Secretary of State; and (5) Federal Integrators has no regular place of business in Texas and keeps no registered agent for service of process in Texas.

Federal Integrators contends that these allegations cannot establish specific jurisdiction over it. Federal Integrators asserts that such pleadings actually demonstrate its lack of its contacts with Texas and Plaintiffs' conclusory pleadings that Federal Integrators has done business in Lamar County, Texas does not change this. Federal Integrators avers that the Court need not accept conclusory jurisdictional allegations, even if unchallenged. Federal Integrators argues that the Second Amended Complaint fails to allege a single act by which it has purposefully availed itself of Texas, let alone one act that would give rise to any of the claims asserted against it in the Second Amended Complaint.

### vi. Professional Services

Professional Services argues that the Second Amended Complaint alleges that: (1) Professional Services is a privately held Alaskan Native Corporation that Cape Fox owns; (2) Harold Mitchell is Professional Services' President; (3) Professional Services is located at 7050 Infantry Ridge Road, Manassas, Virginia; (4) Professional Services has done business in Lamar County, Texas but has not registered as a foreign corporation doing business in Texas with

the Texas Secretary of State; and (5) Professional Services keeps no regular place of business in Texas and no registered agent for service of process in the state.

Professional Services argues that these allegations cannot support the Court's specific personal jurisdiction over it and, instead, show its lack of contacts with Texas. Professional Services claims Plaintiffs' assertion that Professional Services has done business in Lamar County, Texas is conclusory and does not change this. Professional Services states that a court need not accept conclusory jurisdictional allegations, even if undisputed.

### vii. The Subsidiary Defendants' Affidavits Show that Their Contacts with Texas Do Not Permit the Court to Exercise Specific Jurisdiction over Them

In support of these arguments, the Subsidiary Defendants submitted an affidavit by Cape Fox's Director of Contracts Shane Muncy (the "Muncy Affidavit"), declaring that they lacked minimum contacts for the Court to wield general or specific jurisdiction over them (Dkt. #76, Exhibit 1; Dkt. #77, Exhibit 1; Dkt. #78, Exhibit 1; Dkt. #79, Exhibit 1; Dkt. #80, Exhibit 1; Dkt. #82, Exhibit 1). Muncy most notably asserts that the Subsidiary Defendants have never entered contracts or done business with Mrs. Lahman, Mr. Lahman, or Nationwide Provider. (Dkt. #76, Exhibit 1 at p. 5; Dkt. #77, Exhibit 1 at p. 12; Dkt. #78, Exhibit 1 at p. 10; Dkt. #79, Exhibit 1 at p. 4; Dkt. #80, Exhibit 1 at p. 6; Dkt. #82, Exhibit 1 at p. 8).

Muncy avers that Cape Fox does not routinely manage the Subsidiary Defendants and each of the Subsidiary Defendants has its own corporate officers, keeps distinct books and accounts, earns separate revenues, is responsible for its own profits and losses, and has its own financing. Muncy declares that each of the Subsidiary Defendant has its own employees and pays its own wages. Muncy states that Shared Services provides some administrative functions to the Subsidiary Defendants at arm's length. Muncy claims that the Subsidiary Defendants share no departments or businesses with

Cape Fox. Muncy avers that each Subsidiary Defendant's management is distinct from the management of Cape Fox and acts solely in the best interests of the particular Subsidiary Defendant.

Muncy declares that Concentric Methods provided traffic safety training to service members at two army bases in Texas (Dkt. #79, Exhibit 1 at p. 4). Muncy explains that this training was sporadic, used largely part-time employees as needed, and yielded a small portion of Concentric Method's total revenue from 2009 to 2010. Muncy claims that Concentric Methods also contracted to provide two doctors to Fort Hood and Fort Bliss and two physicians to Fort Sam Houston in Texas from 2009 to 2011. Muncy states that Concentric Methods provided five doctors to Fort Hood and the resulting revenues were a small portion of its yearly income.

Muncy asserts that Federal Integrators had one contract with the U.S. Air Force to supply traffic safety training to personnel at three bases in Texas (Dkt. #80, Exhibit 1 at p. 6). Muncy explains that these services accounted for six percent of the work it performed under a larger contract with the Air Force. Muncy advances that these services were irregular, used one to three part-time employees as needed, and generated a small portion of its revenues. Muncy explains that in 2017, Federal Integrators began offering Family Readiness Support Services to a base in Houston, Texas. Muncy asserts that all of Federal Integrator's work in Texas involved at most two employees and yielded one percent of its revenue for 2017.

Muncy claims that Professional Services supplied traffic safety training to personnel at two military bases in Texas (Dkt. #82, Exhibit 1 at p. 8). Muncy asserts that this training was intermittent, used primarily part-time employees, and produced only part of its income. Muncy avers that Professional Services provided technical services to the U.S. Military as a subcontractor and that these services generated two percent of the company's revenue in 2013.

Muncy declares that Government Services provided traffic safety training to personnel at three Army bases in Texas until 2016 (Dkt. #78, Exhibit 1 at p.10). Muncy explains that these

services were variable and used part-time employees. Muncy explains that Facilities Services began supplying traffic safety training to personnel at two Texas army bases in 2017. Muncy contends that this service is irregular, uses at most eight part-time employees, and totals a "mere fraction" of Facilities Services's annual revenues (Dkt. #77, Exhibit 1 at p. 11). Finally, Muncy proclaims that Shared Services "has never solicited or conducted any business in the State of Texas or performed services in Texas or for any Texas client." (Dkt. #76, Exhibit 1 at p. 13).

In Texas, a court may attribute the actions of a parent company to its subsidiary for purposes of exercising personal jurisdiction over it if the subsidiary and parent company fail to operate as separate business entities. *See Cornerstone Healthcare Grp. Holding, Inc. v. Nautic Mgmt. VI, L.P*, 493 S.W.3d 65, 72 (Tex. 2016). Since Plaintiffs filed no response and presented no affidavits to create any genuine, material conflict with the facts established by the Muncy Affidavit, Plaintiffs' contradicted facts, if any, alleged in their complaint are not taken as true. *See Quintana*, 259 F. Supp. 2d at 557 ("[a]llegations in [a] plaintiff's complaint are taken as true except to the extent that they are contradicted by defendant's affidavits.") (citing *Wyatt*, 686 F.2d at 282–83 n.13). Accordingly, Plaintiffs have not adequately pleaded a basis for the Court to exert specific jurisdiction over the Subsidiary Defendants since Plaintiffs have not shown that the Subsidiary Defendants purposefully directed their activities to or availed themselves of the privilege to pursue activities in Texas, Plaintiffs' claims arise or result from the Subsidiary Defendants' forum-related contacts, and the exercise of personal jurisdiction over the Subsidiary Defendants is fair and reasonable. *See STORMAN ASIA M/V*, 310 F.3d at 378. Plaintiffs also did not plead sufficient facts to demonstrate that Cape Fox's actions in the forum can be attributed to the Subsidiary Defendants. Accordingly, Plaintiffs provided no basis for the Court to exercise

specific jurisdiction over the Subsidiary Defendants. Thus, the Subsidiary Defendants' motions to dismiss for lack of personal jurisdiction are hereby granted.

## II. Plaintiffs Did Not Demonstrate Good Cause, Good Faith, and a Reasonable Basis for Failing to Serve Mitchell and Brown in a Timely Manner

Mitchell argues that the Court already gave Plaintiffs more time to serve non-Cape Fox Defendants by denying Cape Fox's motion to dismiss for failing to serve Mitchell, Brown, and the other non-Cape Fox Defendants on September 20, 2017 (Dkt #23) (extending the deadline for service until October 31, 2017). Mitchell advances that Plaintiffs, nevertheless, did not serve him until November 3, 2017—after the Court's extended deadline expired and 210 days after Plaintiffs first added Mitchell as a defendant. Mitchell asserts that there is no evidence that Plaintiffs even tried to serve him until November 2, 2017—after the Court's deadline had passed. Mitchell contends that on October 31, 2017—the last day for service—copies of the requisite documents were served on a wholly unaffiliated party—Harold Wayne Mitchell—in Tampa, Florida. Mitchell avers that Plaintiffs consistently and clearly pleaded that he could be served at 7050 Infantry Ridge Road in Manassas, Virginia—the location where Mitchell was eventually served on November 3, 2017.

Mitchell declares that Plaintiffs served him in his office as President—i.e. as an individual designated by law to accept service for Cape Fox. Accordingly, Mitchell claims that any service he received was solely as an agent of Cape Fox and he has not been personally served in this lawsuit. At last, Mitchell argues that since Plaintiffs were granted an extension of 117 days past the original July 6, 2017 service deadline, the failure to effect service merits dismissal of this action under Federal Rule of Civil Procedure 12(b)(5).

Brown argues that Plaintiffs did not serve him until November 2, 2017—well after the Court's extended deadline expired and 209 days after Plaintiffs first added Brown as a defendant.

Brown avers that Plaintiffs did not send a summons for him to a process server until October 26, 2017.  Brown asserts that Plaintiffs' choice to delay giving the summons to a process server until five days before the extended service deadline is not good cause to excuse their failure to affect timely service.  Brown advances that since the Plaintiffs received an extension of 117 more days past the initial July 6, 2017 deadline for service, their failure to serve him by that deadline merits dismissal of this action for insufficient service of process under Federal Rule of Civil Procedure 12(b)(5).

Plaintiffs did not respond to Brown's and Mitchell's[3] Motions to Dismiss, let alone demonstrate good cause, good faith, and a reasonable basis for not serving Brown and Mitchell within the time allotted.  *Sys. Signs Supplies v. U.S. Dep't of Justice*, 903 F.2d 1011, 1013 (5th Cir. 1990).  Additionally, the Court already lengthened the deadline for Plaintiffs to serve Mitchell and Brown (Dkt. #23).  Given Plaintiffs' repeated failure to timely serve Defendants, Plaintiffs' lack of any explanation for their failure to serve Defendants in a timely manner, and the Court's earlier extension of the deadline to serve Defendants, the Court will not excuse Plaintiffs' insufficient and untimely service and grants Brown's and Mitchell's motions to dismiss.

---

[3] The Court also lacks personal jurisdiction over Mitchell.  Via affidavit, Mitchell declares that he has made three, brief visits to Texas to visit a friend, to attend a conference, and to celebrate Concentric Method's winning a contract with the Defense Health Agency (Dkt. #72, Exhibit 1 at p. 2).  Mitchell further asserts that has never lived in Texas, keeps no mailing address, bank account, or business office in Texas (Dkt. #72, Exhibit 1 at p. 2).  Mitchell also avers that he had never done any business, filed suit, been sued, and has no registered agent for service in Texas (Dkt. #72, Exhibit 1 at p. 2).  Finally, Mitchell advances that he has not worked, filed, or paid taxes in Texas (Dkt. #72, Exhibit 1 at p. 2).  Since Plaintiffs filed no response and presented no affidavits to create any genuine, material conflict with the facts established by Mitchell's Affidavit, Plaintiffs' contradicted facts alleged in their complaint are not taken as true.  *See Quintana*, 259 F. Supp. 2d at 557.  Thus, Plaintiffs have not pleaded sufficient facts for the Court to exert general or specific jurisdiction over Mitchell.

### III. Plaintiffs Pleaded a Plausible Claim for Relief Against Walker but Need to Further Explain Their Claims Against Johnson and Navar

#### A. Plaintiffs Pleaded a Plausible Fraud Claim Against Walker

Walker argues that Plaintiffs do not sufficiently plead facts to state a plausible claim for relief under any of the Second Amended Complaint's causes of action. Walker advances that several of Plaintiffs' claims are barred by statutes of limitations. Walker further contends that federal courts require greater particularity for pleading fraud. In his motion, Walker notably asserts that the Second Amended Complaint alleges that he met with Brown, Verbena Williams, and Mrs. Lahman to discuss Cape Fox's acquisition of Nationwide Provider. Walker also claims that the Second Amended Complaint alleges that Mrs. Lahman asked Walker to review her letter to the Small Business Administration, Walker revised it, Mrs. Lahman did not fully understand his revisions, and Walker did not elaborate upon his revisions to Mrs. Lahman.

After reviewing the Second Amended Complaint and the motion to dismiss, the Court finds that Plaintiffs have stated a plausible claim for purposes of defeating a Rule 12(b)(6) motion. In turn, the Court denies Walker's motion to dismiss for failure to state a claim.

#### B. The Plaintiffs Did Not Plead A Plausible Claim Against Johnson and Navar and Must Further Explain Their Claims

Johnson and Navar argue that the Second Amended Complaint does not clearly or specifically plead any cause of action against them. To that end, Johnson and Navar meticulously account the critical elements of each cause of action in the Second Amended Complaint and stress how the Second Amended Complaint does not plead facts to fully allege any of those causes of action against them. Johnson and Navar most notably claim that the Second Amended Complaint alleges that Johnson told Mrs. Lahman to add a NAICS code to Nationwide Provider's Award Management Profile and submit a bid for repair work at a Naval Air Station in Texas, and Mrs. Lahman refused. Johnson claims that the Second Amended Complaint alleges that Johnson

ordered a Cape Fox employee to add the NAICS code to Nationwide Provider's Award Management Profile so Navar could bid on the repair work despite Mrs. Lahman's objection.

The Second Amended Complaint pleads that Johnson, Navar's CEO, ignored that "[Cape Fox], and its many wholly owned subsidiaries" lacked any control over Nationwide Provider and ordered Mrs. Lahman to "add Navar's NAICS code for construction" to Nationwide Provider's System for Award Management and bid on a construction project in Texas (Dkt. #25 at p. 21). As alleged, when Mrs. Lahman refused to do so, Johnson instructed a Cape Fox employee to add the construction code to [Nationwide Provider's] profile "to enable Navar to submit the bid." (Dkt. #25 at p. 21). Such claims could serve as a basis for tortious interference with existing or potential business relationships, but Plaintiffs do not address all of the elements for that cause of action in the Second Amended Complaint. The Second Amended Complaint does not explain how Johnson's and Navar's actions interfered with Nationwide Provider's current or prospective business and how that interference damaged Nationwide Provider. Put simply, it is unclear whether Cape Fox's Employee could have even interfered with Nationwide Provider's business by adding "Navar's NAICS code for construction" to Nationwide Provider's System for Award Management given Cape Fox's prerogatives under the Administrative Services Contract. After all, the Administrative Services Contract gave Cape Fox "operational control of Nationwide Provider's accounting, finances, information technology, network management, and human resources." *See supra* at 5. In turn, the Court finds that the Second Amended Complaint has not satisfied the pleading requirements under *Iqbal* and *Twombly* and additional briefing is needed. Thus, the Court grants Johnson's and Navar's Motions for a More Definite Statement.

## CONCLUSION

After reviewing the parties' briefing, the Court finds that Plaintiffs did not plead sufficient facts for the Court to wield personal jurisdiction over the Individual Defendants and the Subsidiary Defendants. The Court also concludes that Plaintiffs did not timely serve Mitchell and Brown and did not demonstrate good cause, good faith, and a reasonable basis for not serving them in a timely manner. Lastly, the Court finds that Plaintiffs pleaded plausible claims for relief against Walker but did not fully plead claims for relief against Johnson and Navar.

It is therefore **ORDERED** that Defendant Clifford Blair's Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, Motion to Dismiss for Failure to State a Claim and Alternative Motion for More Definite Statement (Dkt. #64) is **GRANTED**.

It is further **ORDERED** that Defendant George Bernardy's Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, Motion to Dismiss for Failure to State a Claim and Alternative Motion for More Definite Statement (Dkt. #65) is **GRANTED**.

It is further **ORDERED** that Defendant Katherine Milton's Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, Motion to Dismiss for Failure to State a Claim and Alternative Motion for More Definite Statement (Dkt. #67) is **GRANTED**.

It is further **ORDERED** that Defendant Cape Fox Shared Services' Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, for Failure to State a Claim and Alternative Motion for More Definite Statement (Dkt. #76) is **GRANTED**.

It is also **ORDERED** that Defendant Cape Fox Facilities Services' Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, for Failure to State a Claim and Alternative Motion for More Definite Statement (Dkt. #77) is **GRANTED**.

It is further **ORDERED** that Defendant Cape Fox Government Services' Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, for Failure to State a Claim and Alternative Motion for More Definite Statement (Dkt. #78) is **GRANTED**.

It is further **ORDERED** that Defendant Concentric Methods, LLC's Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, for Failure to State a Claim and Alternative Motion for More Definite Statement (Dkt. #79) is **GRANTED**.

It is further **ORDERED** that Defendant Cape Fox Federal Integrators' Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, for Failure to State a Claim and Alternative Motion for More Definite Statement (Dkt. #80) is **GRANTED**.

It is further **ORDERED** that Defendant Cape Fox Professional Services' Motion to Dismiss for Lack Of Personal Jurisdiction or, in the Alternative, for Failure to State a Claim and Alternative Motion for More Definite Statement (Dkt. #82) is **GRANTED**.

It is further **ORDERED** that Defendant Harold Mitchell's Amended Motion to Dismiss for Insufficient Service of Process or, in the Alternative, for Lack Of Personal Jurisdiction or, in the Alternative, Motion to Dismiss for Failure to State a Claim and Alternative Motion for More Definite Statement (Dkt. #72) is **GRANTED**.

It is further **ORDERED** that Defendant Michael Brown's Motion to Dismiss for Insufficient Service of Process or, in the Alternative, Motion to Dismiss for Failure to State a Claim and Alternative Motion for More Definite Statement (Dkt. #75) is **GRANTED**.

It is further **ORDERED** that Defendant Charles Johnson's Motion to Dismiss for Failure to State a Claim and Alternative Motion for More Definite Statement (Dkt. #73) is **GRANTED**. Plaintiffs should file an amended complaint within seven (7) days of this Order.

It is further **ORDERED** that Defendant Navar, Inc.'s Motion to Dismiss for Failure to State a Claim and Alternative Motion for More Definite Statement (Dkt. #81) is **GRANTED**. Plaintiffs should file an amended complaint within seven (7) days of this Order.

It is further **ORDERED** that Defendant Walker's Rule 12(b)(6) Motion to Dismiss Plaintiffs' Second Amended Complaint (Dkt. #66) is **DENIED**.

**SIGNED this 19th day of June, 2018.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE