# United States District Court
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| EARLINE LAHMAN, et al, | § § | |
| v. | § § | Civil Action No. 4:17-CV-305 |
| | § | Judge Mazzant |
| CAPE FOX CORPORATION, et al. | § § | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Strike, or in the Alternative, Motion to Dismiss Plaintiffs' Third Amended Complaint [Dkt. #97], which, after careful consideration, will be granted in part and denied in part.

## BACKGROUND

The allegations in the Third Amended Complaint viewed in the light most favorable to Plaintiffs reflects the following allegations.

Earline and Randy Lahman are the co–founders of Nationwide Provider Solutions, LLC ("NPS"), a company that assists physicians and healthcare providers with medical billing and credentialing. With Ms. Lahman as a partial–owner, NPS qualified for certain government programs aimed at assisting small women–owned businesses. NPS participates in a "Government Contract Vehicle" and has also been named an "8(a)" and "8(m)" business from the Small Business Administration ("SBA"). Each of these designations gives NPS an advantage when bidding for government contracts. The 8(a) program also establishes a Mentor–Protégé Program that connects small 8(a) businesses to larger, more experienced businesses, which provide their proteges support, advice, resources, and mentorship.

In September 2012, the SBA put Ms. Lahman in touch with Michael Brown, the CEO of Cape Fox Corporation. Ms. Lahman met with Brown and Charles Johnson, the CEO of Cape Fox

subsidiary NAVAR, Inc. ("NAVAR"), shortly after. Although the 8(a) program allows a large business to own only 40% or less of the small business it is "mentoring," at this meeting, Brown offered for Cape Fox to wholly purchase NPS from the Lahmans (the "Proposed Sale"). Cape Fox drafted a Purchase Agreement a few months later. The Agreement provided that the SBA would need to approve the sale before it went into effect. It also provided that Cape Fox would pay the Lahmans a $50,000 advance from the full purchase price for NPS and for any personal loans the Lahmans previously made to NPS. Cape Fox subsequently made a series of representations to the SBA in attempts to gain SBA approval over the course of the year. This includes promises to pay the Lahmans the debts they were owed—as well as promises that Cape Fox would pay off two SBA–backed loans that had been taken in NPS' name, Ms. Lahman would continue to manage NPS as the day to day manager, and Cape Fox would keep the majority of NPS jobs in Paris, Texas.

Plaintiffs allege that Cape Fox improperly assumed control of NPS's operations well before the SBA approved the transaction. This allegedly allowed Cape Fox and NAVAR to bid on and receive lucrative government contracts for themselves by (improperly) using NPS' status as an 8(a) business—even when seeking contracts for work that NPS does not perform.[1] Plaintiffs contend that Cape Fox did not, however, fulfill all of the preconditions to the final sale—at the time they were bidding on government contracts or anytime thereafter. Cape Fox, instead, removed Ms. Lahman from her position as CEO and failed to timely pay off the SBA–backed loans. And, although the SBA would approve the Proposed Sale in November of 2013, a few days

---

[1] Although the Third Amended Complaint also suggests that the Subsidiary Defendants used NPS' favorable status as a small women–owned business to secure government contracts, the allegations as to many of these defendants (unlike NAVAR) are conclusory. Plaintiffs allege, without further explanation in a complaint spanning almost forty pages, that "[t]his lawsuit arises from [the Subsidiary Defendants'] business and actions in Texas, including [their] us[e] of NPS' various certifications, contract vehicles, Texas Office Location and past performance history in its efforts to win contracts and work beginning in 2013 and continuing until present day" (Dkt. #95 at pp. 4–6).

later, Cape Fox revealed that it intended to move NPS from Texas to Virginia and fire NPS' Texas–based employees—its promise to keep the majority of NPS jobs in Paris, Texas, apparently notwithstanding. Ms. Lahman responded by locking the NPS work site, which she believes she was entitled to do since the preconditions to the sale were never satisfied. This prompted Cape Fox to break the lock and take NPS' records as well as computers, and other files, property, and equipment. In short, Plaintiffs allege that Cape Fox and/or the other Defendants (1) usurped control over NPS without fulfilling the preconditions to the Proposed Sale, and (2) owes Plaintiffs damages for any benefits they obtained and expenses Plaintiffs incurred due to the unauthorized takeover. Plaintiffs have since filed suit against Cape Fox, its wholly–owned subsidiaries (the "Subsidiary Defendants"),[2] and executives Michael Brown and William Walker on this basis.

Defendants subsequently filed several motions to dismiss the claims or to require Plaintiffs to re–plead their claims with more specificity. The Court found Walker's claims to be sufficiently pleaded but largely granted Defendants' motions otherwise (Dkt. #91). More specifically, the Court dismissed the claims against the Subsidiary Defendants for lack of personal jurisdiction; dismissed the claims against Brown for improper service; and directed the claims against NAVAR to be pleaded with more specificity (Dkt. #91 at p. 25–26, 29). The Court also provided Plaintiffs with seven days to file an amended complaint as to the claims against NAVAR, which has since been filed (Dkt. #91 at p. 31). Plaintiffs now replead certain claims against Brown, NAVAR, and the other Subsidiary Defendants—which Defendants have moved to strike.

---

[2] These subsidiaries include: Concentric Methods, LLC; Cape Fox Federal Integrators; Cape Fox Professional Services, LLC; Cape Fox Government Services; Cape Fox Facilities Services; NAVAR, Inc.; and Cape Fox Shared Services.

3

**LEGAL STANDARDS**

I.  **Motion for Reconsideration**[3]

A motion seeking reconsideration may be construed under Federal Rule of Civil Procedure 54(b), 59(e), or 60(b) depending on the circumstances. "The Fifth Circuit recently explained that 'Rule 59(e) governs motions to alter or amend a final judgment,' while 'Rule 54(b) allows parties to seek reconsideration of interlocutory orders and authorizes the district court to revise at any time any order or other decision that does not end the action.'" *Dolores Lozano v. Baylor Univ.*, No. 6:16-CV-403-RP, 2018 WL 3552351, at *1 (W.D. Tex. July 24, 2018) (quoting *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017)). Further, "'[i]nterlocutory orders,' such as grants of partial summary judgment, 'are not within the provisions of 60(b), but are left within the plenary power of the court that rendered them to afford such relief from them as justice requires [pursuant to Rule 54(b)]." *McKay v. Novartis Pharm. Corp.*, 751 F.3d 694, 701 (5th Cir. 2014) (quoting *Zimzores v. Veterans Admin.*, 778 F.2d 264, 266 (5th Cir. 1985)) (citing *Bon Air Hotel, Inc. v. Time, Inc.*, 426 F.2d 585, 862 (5th Cir. 1970)).

Because this is a motion seeking reconsideration of an interlocutory order, the Court uses Federal Rule of Civil Procedure 54(b). "Federal Rule of Civil Procedure 54(b) provides that, in a case involving multiple claims or parties, 'any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities or fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.'" *Blundell v. Home Quality Care Home Health Care, Inc.*, No. 3:17-cv-1990-L-BN, 2018 WL 276154, at *4 (N.D. Tex. Jan. 3, 2018) (quoting FED. R.

---

[3] As explained below, the Court construes Plaintiffs' attempt to replead claims that have been dismissed as a motion to reconsider the Order dismissing their claims for failure to timely effectuate service and lack of personal jurisdiction (Dkt. #91).

CIV. P. 54(b)). "Under Rule 54(b), 'the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.'" *Austin*, 864 F.3d at 336 (quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990), *abrogated on other grounds*, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 n.14 (5th Cir. 1994)).

II. **Personal Jurisdiction**

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant. FED. R. CIV. P. 12(b)(2). After a non–resident defendant files a motion to dismiss for lack of personal jurisdiction, it is the plaintiff's burden to establish that *in personam* jurisdiction exists. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990) (citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 202 (5th Cir. 1989)).

To satisfy that burden, the party seeking to invoke the court's jurisdiction must "present sufficient facts as to make out only a *prima facie* case supporting jurisdiction," if a court rules on a motion without an evidentiary hearing. *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). When considering the motion to dismiss, "[a]llegations in [a] plaintiff's complaint are taken as true except to the extent that they are contradicted by defendant's affidavits." *Int'l Truck & Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 557 (N.D. Tex. 2003) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 282–83 n.13 (5th Cir. 1982)); *accord Black v. Acme Mkts., Inc.*, 564 F.2d 681, 683 n.3 (5th Cir. 1977). Further, "[a]ny genuine, material conflicts between the facts established by the parties' affidavits and other evidence are resolved in favor of plaintiff for the purposes of determining whether a *prima facie* case exists." *Int'l Truck*, 259 F. Supp. 2d at 557 (citing *Jones v. Petty–Ray Geophysical Geosource, Inc.*, 954 F.2d 161, 1067 (5th Cir. 1992)). However, if a court holds an evidentiary hearing, a plaintiff "must establish jurisdiction by a

preponderance of the admissible evidence." *In re Chinese Manufactured Drywall Prods. Liab. Lit.*, 742 F.3d 576, 585 (5th Cir. 2014) (citing *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241–42 (5th Cir. 2008)).

A court conducts a two–step inquiry when a defendant challenges personal jurisdiction. *Ham v. La Cinega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993). First, absent a controlling federal statute regarding service of process, the court must determine whether the forum state's long–arm statute confers personal jurisdiction over the defendant. *Id.* And second, the court establishes whether the exercise of jurisdiction is consistent with due process under the United States Constitution.

The Texas long–arm statute confers jurisdiction to the limits of due process under the Constitution. *Command–Aire Corp. v. Ont. Mech. Sales and Serv. Inc.*, 963 F.2d 90, 93 (5th Cir. 1992). Therefore, the sole inquiry that remains is whether personal jurisdiction offends or comports with federal constitutional guarantees. *Bullion*, 895 F.2d at 216. The Due Process Clause permits the exercise of personal jurisdiction over a non–resident defendant when the defendant has established minimum contacts with the forum state "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Minimum contacts with a forum state can be satisfied by contacts that give rise to either general jurisdiction or specific jurisdiction. *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994).

General jurisdiction exists only when the defendant's contacts with the forum state are so "'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)); *see Cent. Freight Lines v. APA Transp. Corp.*, 322 F.3d 376,

381 (5th Cir. 2003) (citing *Helicopteros Nacionales de Colum., S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). Substantial, continuous and systematic contact with a forum is a difficult standard to meet and requires extensive contacts between a defendant and the forum. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). "General jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed." *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1992) (citation omitted). However, "vague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction." *Johnston*, 523 F.3d at 609 (citing *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 596 (5th Cir. 1999)).

Specific jurisdiction is proper when the plaintiff alleges a cause of action that grows out of or relates to a contact between the defendant and the forum state. *Helicopteros*, 466 U.S. at 414 n.8. For the court to exercise specific jurisdiction, the court must determine "(1) whether the defendant has . . . purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum–related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).

Defendants who "'reach out beyond one state' and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for consequences of their actions." *Burger King Corp.*, 471 U.S. at 475 (citing *Travelers Health Assoc. v. Virginia*, 339 U.S. 643, 647 (1950)). Establishing a defendant's minimum contacts with

the forum state requires contacts that are more than "random, fortuitous, or attenuated, or of the unilateral activity of another party or third person." *Id.*

"If the plaintiff successfully satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006). In this inquiry, the Court examines five factors: (1) the burden on the nonresident defendant; (2) the forum state's interests; (3) the plaintiff's interest in securing relief; (4) the interest of the interstate judicial system in the efficient administration of justice; and (5) the shared interest of the several states in furthering fundamental social policies. *Burger King Corp.*, 471 U.S. at 477. "It is rare to say the assertion of jurisdiction is unfair after minimum contacts have been shown." *McFadin v. Gerber*, 587 F.3d 753, 760 (5th Cir. 2009) (quoting *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999)).

III.    **Failure to State a Claim**

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well–pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.),*

*L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "'A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well–pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two–step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context–specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

## ANALYSIS

Defendants move to strike or alternatively dismiss Plaintiffs' Third Amended Complaint. They argue that the Third Amended Complaint is redundant. They reason that it improperly asserts

claims against NAVAR remain improperly pleaded and that the claims against Brown and the Subsidiary Defendants have been dismissed for failure to timely effectuate service (Brown) and lack of personal jurisdiction (the Subsidiary Defendants). In the interest of justice, the Court construes Plaintiffs' attempt to replead the claims against Brown and the Subsidiary Defendants as a motion to reconsider the prior Order dismissing these claims. *See Austin*, 864 F.3d at 336–38 (explaining that a motion to reconsider under Rule 54(b) can be granted for "any reason [the Court] deems sufficient" and that courts are to "construe the procedural rules with a preference toward resolving the case on the merits and avoiding any dismissal based on a technicality").

I. **Claims Against Brown**

The Court dismissed the claims against Brown for a failure to timely effectuate service largely due to Plaintiffs' failure to make any effort to explain why service was not timely effectuated (Dkt. #97 at p. 27). Although it had the discretion to excuse the timely service requirement even in the absence of good cause, *see Millan v. USAA General Indem. Co.*, 546 F.3d 321, 325 (5th Cir. 2008), the Court declined to excuse this requirement under these circumstances. Plaintiffs have since, however, explained that they had been unable to timely locate Brown because he moved and Defense counsel was not forthcoming about his new address (Dkt. #107 at p.6)—which is not disputed in the reply (Dkt. #109 ). *See* LOCAL RULE CV–7(d) (explaining that "[a] party's failure to oppose a motion in the manner prescribed herein creates a presumption that the party does not controvert the facts set out by the movants and has no evidence to offer in opposition to the motion"). The Court will not permit Brown to secure a dismissal based on improper service while simultaneously refusing to cooperate with attempts to serve him—in dereliction of his "duty to avoid unnecessary expenses of serving the summons" under Rule 4(f). FED. R. CIV. P. 4(f); *see also* FED. R. CIV. P. 1 (explaining that the federal rules "should be construed, administered, and

employed by the courts *and the parties* to secure the just, speedy, and inexpensive determination of every action and proceeding"). After all, the Fifth Circuit has traditionally disfavored motions to dismiss for improper service. *See Jim Fox Enterprises, Inc. v. Air France*, 664 F.2d 63, 64 (5th Cir. 1981) ("[T]he availability of proper service turns into the question whether there is any possibility . . . that Fox may meet the requirements of Rule 4(d)(3) and thus save its complaint from an early jurisdictional grave. Is so, then we must not dismiss."). This should be especially true here since there is no indication that Brown was prejudiced by the late–service—as evident by Brown's actual notice and active participation in this case. As the Court has previously explained:

> The purpose of services is to give appropriate notice to allow parties to properly present their substantive arguments and not to create considerable procedural hurdles to delay an action.

*WorldVentures Holdings, LLC v. Mavie*, No. 4:18cv393, 2018 WL 6523306, at *7 (E.D. Tex. Dec. 12, 2018) (citing *In re Chinese–Manufactured Drywall Prod. Liab. Litig.*, No. 09-02047, 2015 WL 13387769, at *7 (E.D. La. Nov. 9, 2015)). The Court will permit Plaintiffs to pursue their claims against Brown for these reasons.

II.     **Claims Against the Subsidiary Defendants**

The Court next considers whether to reconsider its order dismissing the Subsidiary Defendants for lack of personal jurisdiction. Plaintiffs argue, without meaningful analysis, that the Court should now find that personal jurisdiction exists over each of the Subsidiary Defendants because they "are wholly owned subsidiaries of CFC," which should allow them to assume CFC's jurisdictional contacts. They also appear to argue that, regardless, the Subsidiary Defendants' contacts with the State are sufficient to establish personal jurisdiction. The Court addresses these arguments in turn.

### a. **Personal Jurisdiction over the Subsidiary Defendants Through CFC**

Although personal jurisdiction is not ordinarily established over one company based on its relationship to a subsidiary or parent, the Fifth Circuit recognizes an exception to this rule where the two entities have a sufficiently close relationship. *See Hargave v. Fibreboard*, 710 F.2d 1154, 1159 (5th Cir. 1983). Plaintiffs contend that Cape Fox has one such relationship with each of the Subsidiary Defendants based on three facts. They note that: (1) the Subsidiary Defendants are wholly owned by Cape Fox, (2) Cape Fox and the Subsidiaries share an address, and (3) Cape Fox and the Subsidiary Defendants share some of the same corporate officers (Dkt. #107 at p. 10).

The Court remains unconvinced—even accepting the truth of these assertions. The Fifth Circuit has long held "that 100% stock ownership and commonality of officers and directors are not alone sufficient to establish an alter ego relationship between two corporations." *See Hargave*, 710 F.2d at 1159 (citing *Walker v. Newgent*, 583 F.2d 163, 167 (5th Cir. 1978); *Turner v. Jack Tar Grand Bahama, Ltd.*, 353, F.2d 954, 956 (5th Cir. 1965)). Plaintiffs must, instead, establish "control by the parent over the internal business operations and affairs of the subsidiary in order to fuse the two for jurisdictional purposes." *See id.* Plaintiffs' assertions that Cape Fox and the Subsidiary Defendants "share[] certification numbers to bid for and receive preferences to obtain government contracts and work" does not indicate that Cape Fox held this type of control over its subsidiaries. *See id.* at 1160 (explaining that a parent company's "complete authority over general policy decisions at K & M, including such matters as selection of product liens, hiring and firing of K & M officers, and approval of sizable capital investments" was not sufficient where "[d]ay–to–day business and operational decisions, however, were made by K & M officers"). The Subsidiary Defendants cannot assume Cape Fox's jurisdictional contacts as a result.

### b. General Jurisdiction

The Court also sees no reason to now find that general jurisdiction exists based on each of the Subsidiary Defendants' contacts to the forum. General jurisdiction exists over a corporation in any district where "a corporation is fairly regarded at home." *See Patterson v. Aker Sols. Inc.*, 826 F.3d 231, 234 (5th Cir. 2016) (citing *Goodyear v. Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). A corporation is ordinarily at home at its place of incorporation and its principal place of business. *See Daimler AG v. Bauman*, 571 U.S. 117, 139 n.19 (2014). However, in "'exceptional cases,'" general jurisdiction may also exist in another location, *see id.* (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 447–48 (1952))—such as when, "due to a world war, defendant's corporate headquarters and finances had de facto been moved from the Philippines to Ohio where the company's President, General Manager and secretaries resided, and its directors met," O'Connell & Stevenson, RUTTER GROUP PRAC. GUIDE: FED. CIV. PROC. BEFORE TRIAL NAT. ED. ¶ 3:108.1 (2018) (citing *Perkins*, 243 U.S. at 447–48). In this case, Plaintiffs have not alleged or provided supporting evidence indicating that the Subsidiary Defendants' respective places of incorporation or principal places of business is in Texas. Nor have Plaintiffs established that this is an exceptional case where the Court may exercise general jurisdiction over the Subsidiaries nevertheless.[4]

### c. Specific Jurisdiction

The question, then, is whether specific jurisdiction exists over the Subsidiary Defendants. Specific jurisdiction is proper when the plaintiff alleges a cause of action that grows out of or relates to a contact between the defendant and the forum state. *Helicopteros*, 466 U.S. at 414 n.8.

---

[4] Plaintiffs, instead, only note that Defendants (1) registered with Texas and established a Texas Taxpayer Number; (2) bid on, been awarded, and has worked on contracts for jobs from 2009 to present; and (3) hired Texas Personnel for jobs located in Texas.

i. *Claims against Concentric Methods, Cape Fox Federal Integrators, Cape Fox Government Services, and Cape Fox Facilities Services*

The Lahmans contend, without explanation, that their claims against Concentric Methods, Cape Fox Integrators, Cape Fox Government Services, and Cape Fox Facilities Services arise from:

> [Their] use of NPS' various certifications, contract vehicles, Texas office location and past performance history in its efforts to work on government contracts beginning in 2013 and continuing until present day

(Dkt. #107 at pp. 10–13). The Lahmans also assert that Concentric Methods directed and required Plaintiffs to submit administrative work for NPS in Texas.

The Court is unconvinced—even assuming that these contacts indicate that the Subsidiary Defendants' purposely directed their contacts to the forum. This is because, despite their conclusory allegations otherwise, Plaintiffs have not explained precisely how their claims against these defendants arise from these contacts. *See Panda BrandyWine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) ("[T]he district court correctly held that the prima–facie–case requirement does not require the court to credit conclusory allegations, even if uncontroverted."). Nor has the Court been able to determine how these allegations fit within the scope of Plaintiffs' claims against these Defendants based on the Third Amended Complaint, which discusses Cape Fox's role in detail while referencing these Defendants only in passing. *See Calder v. Jones*, 465 U.S. 783, 790 (1984) (citing *Rush v. Savchuk*, 444 U.S. 320, 332 (1980) ("Each defendant's contacts with the forum State must be met as to each defendant over whom a state court exercises jurisdiction."). Because Plaintiffs have the burden to establish personal jurisdiction, *see Monkton Ins. Srvs., Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014) ("The plaintiff has the burden to make a prima facie showing that personal jurisdiction is proper"), the Court sees no reason to revisit its prior order dismissing these Defendants from the case. Any "claims" which

the Lahmans attempt to assert against Concentric Methods, Cape Fox Federal Integrators, Cape Fox Government Services, or Cape Fox Facilities Services in the Third Amended Complaint will be stricken as a result.

ii. *Claims against Cape Fox Shared Services*

The Court reaches the opposite result, however, as to the Lahmans' claims against Cape Fox Shared Services.[5] The Lahmans note in a supporting affidavit that, starting in February 2013, Cape Fox Shared Services assumed control over the financial, banking, administrative, human resources, IT, and payroll functions in NPS' operations (Dkt. #107, Exhibit 1 at pp. 9–10).[6] These contacts are sufficiently related to the suit. As explained above, Plaintiffs' claims are based on allegations that Defendants improperly assumed control over NPS and caused damage to Plaintiffs during the time they had that control. Evidence tending to show that Cape Fox Shared Services assumed substantial control over NPS' operations in the relevant time period relate to the suit. Additionally, Cape Fox Shared Services' assumption of control over a Texas–based company's major operations—which, unsurprisingly, caused injury in Texas—indicates that Cape Fox Shared Services purposely directed its conduct toward Texas. *See Calder*, 465 U.S. at 789–90 (finding a California federal court could exercise specific jurisdiction over journalists who wrote a story about a California resident, relied on California sources, and (allegedly) caused harm in California). Cape Fox Shared Services, surely, cannot be surprised that a suit concerning its assumption of control over a Texas company would be brought in a federal court in Texas.

---

[5] Defendants argue that a dismissal for lack of personal jurisdiction is necessarily with prejudice when a plaintiff tries to bring the dismissed claims in the court issuing the dismissal. Even accepting this as true, the Court is still able to reconsider its prior dismissal order at this time. *See* FED. R. CIV. PRO. 54(b) (explaining that the Court has the inherent power to reconsider any orders before entry of a judgment); *Griffith v. City of New Orleans*, No. CIV.A. 11-245, 2013 WL 2555787, at *1 (E.D. La. June 10, 2013) ("The prior dismissals were interlocutory orders that were never the subject of a final judgment. That they were dismissals with prejudice does not alter their interlocutory nature. Therefore, the Court has inherent power to modify or rescind those orders at anytime prior to entry of a judgment.").

[6] Defendants ask the Court to strike certain paragraphs of this affidavit for lack of personal knowledge (Dkt. #109 at p. 4). But, because the Court has not relied on these paragraphs, this request is moot.

Cape Fox Shared Services argues (in its original motion to dismiss) that specific jurisdiction would offend notions of fair play and substantial justice since it "conducts no current business in Texas and maintains no presence in the state" (Dkt. #76 at p. 17). *See Seiferth*, 472 F.3d at 271 (explaining that, after the plaintiff establishes that the defendant has minimum contacts based on its suit–related conduct, "the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable"). But any burden to Cape Fox Shared Services is outweighed by the benefits of the claims against it proceeding in this forum. Texas has a clear interest in Plaintiffs' claims against Cape Fox Shared Services, and it would be highly inefficient not to litigate these claims alongside other claims against related parties that derive from the same nucleus of operative fact. *See Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty.*, 480 U.S. 102, 113 (1987) (explaining that, when determining the reasonableness of exercising jurisdiction, courts consider the parties' interest, the interest of the forum state, and "the interstate judicial system's interest in obtaining the most efficient resolution of controversies").

For these reasons, Plaintiffs have met their burden to make a prima facie showing of specific jurisdiction over Cape Fox Shared Services.

III. **Claims Against NAVAR**

NAVAR argues that the claims against it should be dismissed for failure to state a claim. It notes that the Court previously granted its motion for a more definite statement as to the claims against it and that the Third Amended Complaint remains deficient. The Court disagrees. Viewing the allegations in the light most favorable to them, the Third Amended Complaint indicates that (1) NAVAR's CEO was present at the first meeting in which Ms. Lahman met with Cape Fox Corp's CEO in which the purchase of NPS was first discussed (Dkt. #95 at pp. 10–11), (2) NAVAR forced NPS to make certain misrepresentations to the federal government, over Ms. Lahman's

objections, so that NAVAR could obtain government contracts for itself (Dkt. #95 at pp. 20–21), and (3) NAVAR obtained several lucrative government contracts during this time (Dkt. #95 at p. 4). In a case that turns on the extent to which Defendants unfairly benefited and/or harmed Plaintiffs from their assumption of control over NPS, it would be premature to dismiss the claims against NAVAR at this stage.

IV. **The Other Claims in the Third Amended Complaint; Attorney's Fees**

Defendants argue that the Third Amended Complaint should be struck as a whole. They contend that, although the Third Amended Complaint may contain properly asserted claims against Cape Fox Corporation and Walker, these claims merely "mirror[] the facts alleged in the Second Amended Complaint" (Dkt. #97 at p.8). According to Defendants, this would make the Third Amended Complaint wholly redundant since the claims against Brown and the Subsidiary Defendants are improperly raised. Here too, the Court disagrees. As Plaintiffs note, the Third Amended Complaint narrows the scope of claims at issue and adds allegations to their claims against NAVAR. The Third Amended Complaint will not be struck as a result. The Court similarly sees no reason to award attorney's fees for a motion that will be granted in part and denied in part.

## CONCLUSION

Accordingly, Defendants' Motion to Strike or, in the Alternative, Dismiss Plaintiffs' Third Amended Complaint [Dkt. #97] is **GRANTED IN PART** and **DENIED IN PART** as described herein. Plaintiffs' claims against Concentric Methods, Cape Fox Federal Integrators, Cape Fox Government Services, and Cape Fox Facilities Services remain dismissed and are therefore **STRUCK** from the Third Amended Complaint. The Clerk of the Court is **DIRECTED** to

terminate these parties as a result. Plaintiffs' claims against Brown, Cape Fox Shared Services, and NAVAR, Inc., however, are properly before the Court.

**IT IS SO ORDERED**.

**SIGNED this 13th day of March, 2019.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE