# United States District Court
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| EARLINE LAHMAN, ET AL. | § | |
| --- | --- | --- |
| | § | |
| v. | § | Civil Action No. 4:17-cv-305 |
| | § | Judge Mazzant |
| CAPE FOX CORPORATION, ET AL. | § | |
| | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant William Walker's ("Walker") Rule 12(c) Motion for Judgment on the Pleadings (Dkt. #115). After reviewing the relevant pleadings, the Court finds that Walker's motion should be granted.

## BACKGROUND

The Small Business Association ("SBA") provides a mentorship service that connects small businesses to larger ones (Dkt. #95 at p. 10). The SBA connected Michael Brown ("Brown"), Cape Fox Corporation's ("Cape Fox") CEO, to Earline Lahman ("Lahman"), who owns National Provider Solutions ("NPS") with her husband. In late 2012, Brown proposed purchasing NPS and immediately asked Walker, as Cape Fox's outside counsel, to draft a letter to Lahman outlining the initial terms of the offer (Dkt. #95 at p. 11). Lahman then met with Brown and Walker for several days of in-person meetings at Cape Fox's headquarters in Virginia (Dkt. #95 at pp. 11–12).

Before the sale would go into effect, the SBA would need to approve the transaction. The SBA asked Lahman to write a letter that explained why she wanted the sale to go forward. (Dkt. #95 at pp. 16–17). But when she did so, Walker revised the letter, without explaining his edits, before it was sent to the SBA. (Dkt. #95 at pp. 16–17). The SBA then initiated a conference call

with Lahman, Brown, and Walker because Cape Fox had failed to submit certain documents (Dkt. #95 at pp. 18–19). Walker drafted one of these documents for Lahman, but the SBA informed her that its form was unacceptable (Dkt. #95 at p. 19). Lahman then drafted it herself, and it was accepted (Dkt. #95 at p. 19).

Still having not acquired NPS, in July 2013, Walker and a lobbyist, C.J. Zane, discussed ways to expedite the transaction (Dkt. #95 at p. 21). Cape Fox, through Walker and Brown, then changed the terms of their agreement to limit the maximum amount of payment that the Lahmans could receive through NPS' profits (Dkt. #95 at p. 23). Lahman initially refused to sign the change of terms, but Brown and Walker threatened to sue (Dkt. #95 at p. 23).

The SBA would ultimately approve the transaction—though only based on allegedly false information Defendants provided them—such as a promise that NPS would remain in Texas. At this point, Walker asked Cape Fox's CEO when he would prefer the transfer of NPS to occur (Dkt. #95 at p. 25). Walker then sent an email that outlined specific actions that Cape Fox should take to change NPS' ownership documents to reflect Cape Fox ownership, to set up an NPS ethics compliance program, and to draft minutes "to close out the paper trail" (Dkt. #95 at p. 25). Defendants subsequently announced their plans to move NPS from Texas to Virginia.

In short, Plaintiffs allege that Defendants did not or should not have acquired NPS but attempted to take control over some or all of the company's operations anyway.

Plaintiffs sued Cape Fox, Walker, and others on this basis. Walker now moves for judgment on the pleadings. He notes that Plaintiffs' allegations against him are based on conduct he took as Cape Fox's outside counsel—such as drafting contracts, revising letters, and arranging meetings—and that he is protected under attorney immunity as a result (Dkt. #115). Plaintiffs have not disputed these assertions, and the deadline to do so has long passed.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not the delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). "A motion brought pursuant to FED. R. CIV. P 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (citation omitted); *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312–13 (5th Cir. 2002). "The central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Hughes v. Tobacco Inst., Inc.,* 278 F.3d 417, 420 (5th Cir. 2001) (citing *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 440 n.8 (5th Cir. 2000)).

"Pleadings should be construed liberally, and judgment on the pleadings is appropriate only if there are no disputed issues of fact and only questions of law remain." *Great Plains Tr.*, 313 F.3d at 312 (quoting *Hughes*, 278 F.3d at 420). The standard applied under Rule 12(c) is the same as that applied under Rule 12(b)(6). *Ackerson v. Bean Dredging, LLC*, 589 F.3d 196, 209 (5th Cir. 2009); *Guidry v. Am. Pub. Life Ins. Co*., 512 F.3d 177, 180 (5th Cir. 2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund*

*V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "'A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## ANALYSIS

Walker argues that Plaintiffs' claims against him are barred by the attorney immunity doctrine. The Court agrees.

Attorneys are "immune from liability to nonclients for conduct within the scope of [their] representation of [their] clients." *Youngkin v. Hines*, 546 S.W.3d 675, 681 (Tex. 2018). The Texas Supreme Court's decision in *Cantey Hanger, LLP v. Byrd* "controls [the] analysis of immunity."

4

*Id*. *Byrd* explains that "an attorney does not owe a professional duty of care to third parties who are damaged by the attorney's negligent representation of a client." *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015). "Even conduct that is 'wrongful in the context of the underlying suit' is not actionable if it is 'part of the discharge of the [attorney's] duties in representing his or her client'" and not "entirely foreign to the duties of an attorney." *Id.* at 481–82 (citations omitted). Attorney immunity exists "to ensure 'loyal, faithful, and aggressive representation by attorneys employed as advocates.'" *Id.* at 481 (quoting *Mitchell v. Chapman*, 10 S.W.3d 810, 812 (Tex. App.—Dallas 2000, pet. denied)). To distinguish between attorney conduct that is and is not protected by attorney immunity, the Court asks, "whether the conduct was 'the kind in which an attorney engages when discharging his duties to a client.'" *LJH, Ltd. v. Jaffe*, No. 4:15-CV-00639, 2017 WL 447572, at *2–3 (E.D. Tex. Feb 2, 2017) (quoting *Byrd*, 467 S.W.3d at 482).

The Court's ruling in *Jaffe* is illustrative. In a contract dispute between a seller and a buyer, the Court determined that attorney immunity did not shield the attorney representing the seller but did shield the law firm representing the seller. *Id.* at *2–4. Both the individual attorney and the law firm argued that they acted in their roles as legal counsel. Specifically, they argued that coordinating a sale between two businesses and meeting a perspective buyer on behalf of a business are both normal functions of an attorney. The buyer, however, argued that the individual attorney was not acting as an attorney when he negotiated the sale because he was also a partner and authorized representative of the company he represented. The Court found that attorney immunity might not shield the individual attorney because he might have been acting outside of his legal capacity due to his partnership interest. However, the Court came to the opposite conclusion regarding the law firm because the firm had no ownership stake in the seller, and their only alleged conduct was not "'foreign to the duties of an attorney.'" *Id*. at *2 (quoting *Byrd*, 467

5

S.W.3d at 482). For these reasons, the Court denied applying an attorney immunity bar to the claims against the attorney but granted attorney immunity for the law firm. *Id*.

Similar to the law firm in *Jaffe*, Walker's representation of Cape Fox consisted of actions that were not "foreign to the duties of an attorney." *Id*. Plaintiffs fault Walker for his work attending meetings; writing and revising contracts and letters on behalf of NPS, Lahman, and Cape Fox; threatening to file a lawsuit; and performing other tasks that helped to move the acquisition forward. *See Troice v. Proskauer Rose, L.L.P.*, 816 F.3d 341 at 348 (5th Cir. 2016) (indicating that a company's outside counsel's communications with other organizations on behalf of his client is protected attorney conduct). Most of Walker's alleged activities took place in the presence of or at the request of Cape Fox's CEO. There is also no indication that Johnson had any ownership interest in Cape Fox in his role as outside counsel (Dkt. #95 at p. 6). The pleadings consequently do not suggest that Walker has any interest in Cape Fox outside of his role as outside counsel. Because his alleged conduct was limited to "the kind in which an attorney engages when discharging his duties to a client," Walker is shielded from liability under the attorney immunity doctrine. *Id*. at 482. Any claims against Walker must be dismissed as a result.

Walker also seeks attorney's fees incurred to litigate this case. The Court declines to award attorney's fees at this time because Walker has not briefed his entitlement to them.[1]

## CONCLUSION

Defendant William Walker's Motion for Judgment on the Pleadings (Dkt. #115) is **GRANTED** to the extent described herein.

---

[1] The Court may consider awarding attorney's fees on a motion that is fully briefed, and supported by appropriate evidence.

Accordingly, Plaintiffs' claims against Defendant William Walker are **DISMISSED** with prejudice, though the Court reserves jurisdiction over these claims for the sole purpose of determining his entitlement to attorney's fees.

**IT IS SO ORDERED.**

**SIGNED this 15th day of August, 2019.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE